FILED
2012 Aug-08  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL VERGES | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:11-cv-01261-RBP |
| | ) |
| HONDA MANUFACTURING OF | ) |
| ALABAMA, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This cause comes before the court on defendant Honda Manufacturing of Alabama, LLC's ("Honda") Motion for Summary Judgment against the plaintiff Michael Verges ("plaintiff"). Honda asserts that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law with respect to the plaintiff's interference claim, his FMLA retaliation claim, and his claim for backpay. For the reasons explained below, the defendant's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

### Facts[1] and Procedural History

The plaintiff was hired as a Process Associate at Honda's Lincoln, Alabama plant on May 6, 2002. At that time he received an Associate Handbook which included Honda's Attendance and FMLA policies. Honda has a "no-fault" Attendance Policy which requires all associates to request approval from his or her Team Coordinator or Team Manager prior to leaving his or her shift early.

---

[1] All facts have been construed in favor of the plaintiff as the non-movant pursuant to *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Under the Attendance Policy if an associate leaves a shift early without permission, he or she will be subject to disciplinary action up to and including termination. Honda provides up to 12 weeks of FMLA leave to eligible associates with a serious health condition or who are needed to care for a parent, child, or spouse with a serious health condition. During 2006-2009, Honda used a third-party administrator, Aetna, to process and administer FMLA leave. Also during 2006-2009, Honda used a third-party contractor, Security Engineers, Inc. ("Security"), to provide security services at its Lincoln, Alabama facility. Associates must make requests for FMLA leave to Aetna and must report absences from work to Security no later than the start of the associate's assigned shift.

The plaintiff's wife suffered from multiple serious medical conditions and resided at a nursing home at all times material to this case. The plaintiff requested and received intermittent FMLA leave based upon his wife's medical condition in February 2006, January 2007 and January 2008. The plaintiff also received FMLA leave in January 2008 for his own medical condition. In January of 2009, the plaintiff was approved for intermittent FMLA leave in connection with his wife's serious medical condition for the calendar year of 2009.

On April 7, 2009, during his lunch break, the plaintiff received a voicemail from his daughter stating that he needed to go check on his wife at the nursing home because she was distressed. The plaintiff tried unsuccessfully to call his daughter, his wife, and the nursing home. Believing it was an emergency situation, the plaintiff decided to leave his shift early. He looked for, but could not find, his Team Coordinator or Team Manager. He contacted Security to report his absence and contacted Aetna to request FMLA leave.

Honda conducted an investigation into the plaintiff's leaving his shift early and concluded that he failed to obtain permission to leave in violation of Honday's Attendance Policy. As of April

7, 2009 the plaintiff was on an active "Level II Final Warning" after having been disciplined on multiple occasions for inappropriate behavior or for mistakes made on an assembly line process. Pursuant to Honda's general progressive disciplinary scheme, a Level II Final Warning is the last step before termination.  However, violations of the Attendance Policy do not follow the progressive disciplinary scheme. Based upon its investigation, Honda terminated the plaintiff on April 14, 2009 for violating Honda's Attendance Policy. On April 21, 2009, the plaintiff sent Honda a letter acknowledging his failure to notify a Team Coordinator or Team Manager prior to leaving his shift early on April 7, 2009, but appealing the termination decision because he believed the disciplinary action imposed was too severe. On May 1, 2009, Honda responded to the plaintiff's letter and informed him that the termination decision would stand.

The plaintiff filed the instant complaint on April 12, 2011. He alleges (1) that the defendant unlawfully interfered with his rights in violation of the FMLA; and (2) that his termination by the defendant constitutes unlawful retaliation and/or discrimination in violation of the FMLA. The plaintiff contends that he is entitled to lost wages in the form of back pay and front pay, among other types of damages and relief. Honda filed a Motion for Summary Judgment on May 8, 2012 against all of the plaintiff's claims.

In the plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed June 19, 2012, he states, "Mr. Verges opposes the Defendant's Motion only to the extent it seeks dismissal of Count Two of his Complaint and/or a limit to his backpay claim." Doc. 23, p. 1. In the Response, the plaintiff only addressed his retaliation claim, and did not address his interference claim. Therefore, the plaintiff has waived his FMLA interference claim.  He also waived it for failing to brief the claim. Fed R. Civ. P. 56(e) states, "if the adverse party does not respond,

summary judgment, if appropriate, shall be entered against the adverse party." Summary judgment is due to be granted with respect to the plaintiff's interference claim. The court will  address the plaintiff's FMLA retaliation claim and his claim for backpay.

Summary Judgment Standard

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  "On summary judgment, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Shotz v. City of Plantation, Fla.*, 344 F. 3d 1161, 1164 (11[th]

4

Cir. 2003) (quoting *Molina v. Merritt & Furman Ins. Agency*, 207 F. 3d 1351, 1356 (11ᵗʰ Cir. 2000)).

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat

a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam)

(citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a]

mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

<u>Analysis</u>

The FMLA provides that an eligible employee may take up to twelve weeks of leave each

year to care for a child, spouse, or parent with a serious health condition. *See* 29 U.S.C. § 2612(a)(1).

The Eleventh Circuit has recognized that in order to preserve and enforce an employee's rights, the

FMLA creates a retaliation claim, "in which an employee asserts that his employer discriminated

against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2);

29 C.F.R. § 825.220(c)." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239

F.3d 1199, 1206 (11th Cir. 2001). Where there is no direct evidence of an employer's retaliatory

intent, the plaintiff has the burden  to establish a prima face case of retaliation. *Hurlbert v. St. Mary's*

*Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). To state a retaliation claim under

the FMLA, a plaintiff must prove the following elements: "(1) he availed himself of a protected right

under  the  FMLA;  (2)  he  suffered  an  adverse  employment  decision;  and  (3)  there  is  a  causal

connection between the protected activity and the adverse employment decision." *Wascura v. City*

*of Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (quoting *Parris v. Miami Herald Publ'g Co.*, 216

F.3d 1298, 1301 (11th Cir. 2000)).  For summary judgment, "the employee must raise only a material

5

issue of fact, which he may generate through reasonable inferences regarding each element of his claim." *Parris*, 216 F.3d at 1301. If the plaintiff succeeds in establishing a prima facie case for retaliation, "the burden then shifts to the defendant to articulate a legitimate reason for the adverse action." *Hurlbert*, 439 F.3d at 1297. Finally, if the defendant does so, "the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." *Id.* "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Strickland*, 239 F.3d at 1207 (quoting *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)).

First, the plaintiff must raise a material issue of fact as to whether he availed himself of a protected right under the FMLA. In the instant case, this element turns on whether the plaintiff violated Honda's Attendance Policy.  The regulations provide:

> (c) Complying with employer policy. When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.[2] For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, or is able to use, a phone. Similarly, in the case of an emergency requiring leave because of an FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.303(c) (2009). *See also Lowery v. Strength*, 356 Fed. Appx. 332, 333 (11th Cir. 2009) (acknowledging the regulation).

Honda asserts that the plaintiff has attempted to exercise a right in this case that is not

---

[2] The regulations do not provide, and this court is not aware of, a definition of "unusual circumstances."

provided by the FMLA because he violated the company's Attendance Policy and other guidelines by leaving work without authorization and without providing proper notice to Honda. The defendant argues that the plaintiff was aware of Honda's Attendance Policy and its requirements, and that he has presented no evidence of "unusual circumstances" to excuse his failure to comply. The plaintiff argues, however, that he did not violate Honda's Attendance Policy, because he did contact Plant Security and Aetna. Moreover, the plaintiff states that Honda's FMLA Policy (as distinguished from its general attendance policy) does not require the employee to contact his team coordinator or manager. Furthermore, the plaintiff asserts that Honda's Attendance Policy does not address what the employee should do if he tries to contact his team coordinator or manager in order to leave his shift early but cannot find them. The plaintiff claims that needing to tend to a family emergency and not being able to locate the proper personnel to inform them of his need to leave his shift early constitutes "unusual circumstances" that excuse any failure to comply with company policy.

Honda's Attendance Policy provides in part:

> Should it be necessary for an associate to leave a shift early, the associate must request approval from his/her Team Manager prior to leaving. . .

> If, at any time, an associate leaves the work area without his/her Team Coordinator's or Team Manager's approval, he/she will be subject to corrective action up to and including termination. . .

> ***Any absence from work that is not covered*** under plant vacation days, paid time off (PTO), holiday, bereavement, military leave, jury duty, ***family medical leave***, medical leave, personal leave, suspension or any other approved time off will be treated as an attendance occurrence under this policy and points will be assessed.

Doc. 17-6, p. 29 (emphasis added).

Honda's employee manual also addresses FMLA leave, providing in part:

**Responsibilities of Associates on FMLA:**

To request a Leave of Absence, eligible associates must contact Aetna by calling 1-888-536-2732 or x5582. If the leave is foreseeable, the associate needs to notify Aetna at least thirty (30) days in advance of the requested leave start date. If the leave is unforeseeable, the associate should notify Aetna by the end of the fourth (4th) consecutive workday missed. The first day missed counts as day one (1). . .

Doc. 17-6, p. 33.

The court finds that the plaintiff has raised a genuine issue of material fact with respect to the first element of his retaliation claim under the FMLA - that he sought to avail himself of a protected right under the FMLA. *See Wascura*, 257 F.3d at 1248 (stating three-part test for FMLA retaliation claim); *Parris*, 216 F.3d at 1301 (on summary judgment, "the employee must raise only a material issue of fact, which he may generate through reasonable inferences, regarding each element of his claim."). There is an issue of fact with respect to whether the plaintiff violated the defendant company's policies. On the one hand, the Attendance Policy compels employees to seek permission before leaving a shift early. One the other hand, the Attendance Policy seems to distinguish between ordinary absences and absences due to family medical leave and implies that they will be treated differently. Moreover, the section in Honda's employee manual dealing with FMLA leave provides different instructions for seeking absences approved under the FMLA. Therefore, the factual issues surrounding this element of the retaliation test preclude summary judgment.

Because the second element of the Eleventh Circuit's retaliation test in *Wascura* would clearly be met here since termination is an "adverse employment decision,"[3] the court will now consider whether the plaintiff has raised an issue of material fact with respect to the third element -

---

[3] *See*, *e.g.*, *Hurlbert*, 439 F.3d at 1298 ("Hurlbert's termination is certainly an adverse employment action. . .").

8

causation. Honda argues that the plaintiff has failed to present evidence of causation between his requests for and use of FMLA leave and his April 2009 termination. In support, the defendant cites the fact that the plaintiff had requested and had been approved for intermittent leave for his wife's condition for each of the calendar years of 2006, 2007, 2008, and 2009. The defendant also argues that the temporal proximity between his request for leave and his termination is insufficient to establish causation. The plaintiff argues that the temporal proximity in this case is significant - he was fired on April 14, 2009, one week after taking FMLA leave on April 7th. Furthermore, there were no other incidents that occurred between those two dates.

In order "'[t]o survive summary judgment, the employee must show only that 'the protected activity and the adverse action were not wholly unrelated.'" *Norman v. Southern Guar. Ins. Co.*, 191 F.Supp.2d 1321, 1332 (M.D. Ala. 2002) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). One factor considered by courts is temporal proximity between the allegedly protected action and the termination. *See Norman*, 191 F.Supp.2d at 1332 ("This burden of causation may be met by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action.") (citing *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001). The Eleventh Circuit has stated that "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Hurlbert*, 439 F.3d at 1298 (quoting *Brungart v. BellSouth Telecomms., Inc.* 231 F.3d 791, 799 (11th Cir. 2000)). Temporal proximity certainly exists here, considering that only 7 days passed between the plaintiff's leaving his shift early and his termination. Therefore, this court finds that the plaintiff has raised a genuine issue of material fact with respect to all elements of the Eleventh Circuit's retaliation test

9

and has established a prima facie case for retaliation.

Next, the court will consider whether the defendant has provided a legitimate reason for the plaintiff's termination. The Eleventh Circuit has recognized that a defendant is entitled to raise legitimate reasons for termination as an affirmative defense to liability under the FMLA. *See Spakes v. Broward County Sheriff's Office*, 631 F.3d 1307, 1310 (11th Cir. 2011); *Strickland*, 239 F.3d at 1208. Honda asserts that it would have terminated the plaintiff regardless of his reason for leaving his shift early because he violated company policy. In its Reply Brief, the defendant writes that "[Honda] has terminated other [Honda] associates who left their shift early without TM or TC approval and who had not otherwise sought FMLA leave." (Doc. 25, p. 8). However, the facts indicate that the plaintiff had in fact sought intermittent FMLA leave for the 2009 calendar year. Moreover, there is a genuine issue of material fact as to whether Honda's policy would have even called for termination in this instance, given the discrepancies between the Attendance Policy and FMLA leave sections of the employee manual.  In other words, because it is not totally clear that the plaintiff violated company policy in the first place, there remains a factual issue with respect to whether the defendant had legitimate reasons for terminating the plaintiff.

Finally, even if the court were to find that the defendant provided a legitimate reason for the plaintiff's termination, the court also finds that the plaintiff has raised a genuine issue of fact with respect to pretext. The Eleventh Circuit has stated, "[t]o show pretext, a plaintiff must 'come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Hurlbert*, 439 F.3d at 1298 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1014 (11th Cir. 2000) (en banc) (internal quotation marks

omitted)). In *Hurlbert*, the Eleventh Circuit held that the "close temporal proximity between Hurlbert's request for leave and his termination- no more than two weeks, under the broadest reading of the facts- is evidence of pretext, though probably insufficient to establish pretext by itself." *Id*. The court has already noted the close temporal proximity between the plaintiff's leaving his shift early and his subsequent termination. In addition, after construing the facts in the light most favorable to the plaintiff, there is at least a genuine issue of material fact as to whether he in fact violated Honda's Attendance Policy, and thus whether there was a legitimate reason, as opposed to a pretexutal reason, for his termination. Finally, the plaintiff asserts that Honda provided him with contradictory reasons for his termination. He claims he was initially told in writing by human resources personnel that he was being fired for failure to clock out in violation of Honda's Attendance Policy, but that the defendant now cites the reason for termination as failure to notify specific managers before leaving his shift early. The Eleventh Circuit has "recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert*, 439 F.3d at 1298 (citing *Wascura*, 257 F.3d at 1245-46; *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601-02 (11th Cir. 1986)). Therefore, this court finds that the plaintiff has raised a genuine issue of fact with respect to pretext.[4]

Finally, the court will consider the issue of backpay. In its Motion for Summary Judgment, the defendant claims that prior to working at Honda, the plaintiff had worked for and had been terminated from Transcycle, Inc. Upon completing his employment application with Honda, the plaintiff falsely represented that he had quit Transcyle, Inc. at the recommendation of a physician

---

[4] It seems clear that there was a definite causal relationship between the termination and the April 7, 2009 circumstances.

because he had developed a rash from exposure to chemicals. The defendant asserts that the Honda application included a signed statement by the plaintiff that he understood he would be terminated for making false representations on his employment application. The defendant argues, assuming *arguendo*, that the plaintiff is entitled to damages under the FMLA for his retaliation claim, he is only entitled to backpay up until the date his misrepresentation on his application to Honda was discovered on October 10, 2011[5] under the doctrine of after-acquired evidence. *See Wallace v. Dunn Construction Co., Inc.*, 62 F.3d 374, 380 (11th Cir. 1995) (applying doctrine of after-acquired evidence where there existed no genuine issue of material fact that plaintiff would have been fired when defendant learned that plaintiff had lied on her job application).

The plaintiff does not deny the misrepresentation, but argues that the defendant has failed to meet its burden of establishing that the after-acquired evidence doctrine applies to this case because it did not provide record evidence of the date on which it claimed to have learned of the plaintiff's misrepresentation. The defendant states that even assuming that its listing of the date it discovered the plaintiff's misrepresentation in its Motion for Summary Judgment is insufficient, the plaintiff's deposition dated March 26, 2012 provides record evidence of Honda's awareness of the plaintiff's admitted misrepresentation.[6] Because there remain genuine issues of fact respect to the plaintiff's claim of backpay, the defendant is not entitled to summary judgment as to its claim that any backpay awarded should be limited.

---

[5] In its Motion for Summary Judgment, the defendant provides October 10, 2011, as the date on which it learned of the plaintiff's alleged misrepresentation. However, in its Reply Brief, the defendant provides October 10, 2010 as that date, explaining that that was the date counsel for Honda received subpoenaed documents from Transcycle, Inc. regarding the plaintiff's termination of employment. *Compare* Doc. 16, p. 29 *with* Doc. 25, p. 10.

[6] Presumably, if the plaintiff's deposition is used as record evidence of Honda's awareness of the plaintiff's misrepresentation, then backpay would only be limited to the date the deposition was taken, March 26, 2012.

Conclusion

The plaintiff has waived his FMLA interference claim, but has raised genuine issues of material fact with respect to his retaliation claim and his claim for backpay. Therefore, the defendant's Motion for Summary Judgment is due to be GRANTED with respect to the plaintiff's interference claim, and is due to be DENIED with respect to the plaintiff's retaliation claim and claim for backpay.

This the 8th day of August, 2012.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE